| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X | RETURN DATE:   MARCH 23, 2017<br>TIME:                      11:00 A.M. |

In Re:

Gershon Barkany,

              Debtor.

------------------------------------------------------------X

Marc A. Pergament, as Chapter 7 Trustee of
the Estate of Gershon Barkany,

              Plaintiff,

- against -

Barkany Asset Recovery and Management
LLC, Cortland Realty Investments LLC,
Marshal Eisenberg, Debra Eisenberg Wilder,
Seth Farbman, SSS, LLC, Rachell Gober,
The Boss's Daughter, LLC, Shalom
Maidenbaum, Anthony Montilli, Joran Most,
Janet Pinsky, Chaim Silberberg, Mr. San,
LLC, Gerald Pinsky, Moshe Schreiber, Leah
Schreiber, Central Strategies, LLC, MLS
Resources, LLC and Mordechai Hellman,

              Defendants.

------------------------------------------------------------X

Chapter 7

Case No. 814-72941-845

Adv. Proc. No. 816-08146-845

Reply Affirmation in Further Support of
<u>Plaintiff's Motion to Approve Settlement Agreement</u>

Marc A. Pergament, duly affirms under the penalties of perjury as follows:

1.    I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a partner in Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

2.  I am also the Trustee of the Debtor's[1] Bankruptcy Estate.

3.  This Reply Affirmation is submitted in response to the Objection filed on behalf of Joseph Rosenberg, Jonathan Zelinger, Ethical Products Inc. and Petex International Limited (collectively, "Objectants") and in further support of my Motion for an Order approving the Settlement Agreement. (*See* Ex. A.)[2]

4.  The Objection represents the lone opposition to the Settlement Agreement. The Objectants are defendants in pending lawsuits in this bankruptcy case and before the United States District Courts. Their status as defendants cannot be ignored when evaluating their Objection. Regardless, nothing contained in the Objection provides a basis to overcome my business judgment in entering into the Settlement Agreement and seeking its approval. (*See* Pergament Aff., ¶¶ 24, 25.)

5.  The Objection is not supported by an affidavit and is based on pure supposition and conjecture. This Court need not conduct an evidentiary hearing in order to overrule the Objection.

6.  The Objection alleges that I reached the Settlement Agreement prematurely, having done so without the benefit of formal discovery and after only four (4) months following my reappointment. (*See* Objection, ¶¶ 11, 13, 15.) This argument fails.

7.  I only agreed to the terms of the Settlement Agreement after numerous conferences, meetings, discussions and various other communications with members of BARM and their counsel, Shalom Jacob, Esq. and Allen Wasserman, Esq., the individuals, along with David Belsky, CPA, BARM's managing member, most familiar with the transactions underlying

---

[1] Unless defined herein, capitalized terms are defined in my Affirmation dated February 7, 2017 in support of the Motion ("Pergament Aff.").

[2] Unless annexed hereto, Exhibits identified by letters are annexed to the Pergament Aff. Exhibits identified by numbers are annexed to the Objection.

the Objection. During the various meetings, in response to detailed questioning, representations were made to me regarding BARM's collection efforts and the transactions between BARM and the Debtor/Debtor Entities. I took these representations, which were consistent with all of the documents and records reviewed by my counsel and I, into careful consideration before deciding it was in the best interests of the Estate to amicably resolve the claims against BARM pursuant to the terms of the Settlement Agreement.

8. In addition, while the negotiations occurred over a several month period following my reappointment, the Objection disregards the analysis, research and investigation undertaken by me and my counsel during the interim period following my appointment as Interim Trustee and prior to the appointment of Mr. Frankel. During that interim period, I explored various legal theories and conducted extensive factual inquiries with respect to the funds collected by BARM and the manner in which those funds were collected.

9. Further, upon my reappointment as Trustee, my counsel and I reviewed the pleadings and papers filed in this adversary proceeding prior to Mr. Frankel's resignation on October 6, 2016.

10. In sum, the decision to enter into the Settlement Agreement was made only after extensive negotiations and a thorough investigation of the facts and the law by me and my counsel.

11. The Objection makes numerous allegations and advances various facts and theories regarding BARM. In addition, the Objection relies on statements made during proceedings before the Court that BARM attended. (*See* Objection, ¶¶ 1, 2, 7, 8, 10 and 12.) It is my understanding that BARM will be addressing these arguments. Nothing alleged by the Objectants undercuts my belief that the Estate's resources would not have been served by

prosecuting claims against BARM based on the manner in which it sought to collect its debts and enforce the Judgment.

12. The Objectants contend that there was one ongoing Ponzi Scheme. (*See* Objection, ¶¶ 2, 3, 4, 20.) Although I cannot confirm or deny the Objectants' theory, it is a red herring. The theory, if true, would not alter my analysis regarding the settlement with BARM.

13. The Objection suggests that BARM received the sum of at least $1,000,000.00 through funds invested by "Schonberger, the Canadian Northern Creditors and the Ludvik Hilman Family Trust, and then passed through either the Gerson escrow account or the Sarah Rosenberg bank account prior to delivery." (Objection, ¶¶ 5, 23.)

14. However, neither Schonberger nor any of the Canadian Northern Creditors including the Ludvik Hilman Family Trust, objected to the proposed settlement or provided me with any information or documents supporting the theories advanced in the Objection.

15. As a result of my investigation, I understood that BARM received the approximate sum of $270,000.00 from the Canadian Northern Creditors. I considered this transfer when agreeing to enter into the Settlement Agreement.

16. The Objectants appear to be suggesting that BARM knew of additional Ponzi Scheme activity. I am unaware of any evidence supporting this allegation.

17. According to Objectants (*see* Objection, ¶ 5), certain transfers to BARM were made through Barkany's attorney and spouse. It is my further understanding and belief, based on my discussions with attorneys Shalom Jacob, Esq. and Allen C. Wasserman, Esq., that BARM did not have any knowledge that the funds they received from the Gerson escrow account or through Sarah Rosenberg included funds from Schonberger and/or the Canadian Northern creditors. I do not believe that the fact that funds were transferred through the Debtor's attorney

and spouse raises a "red flag" upon which liability maybe predicated. The facts alleged by Objectants do not warrant an inference that BARM, through reputable counsel and accountants, acted inappropriately in accepting those payments.

18. The Objectants argue that BARM received payments from Morgan 86, one of the Debtor's Entities. (*See* Objection, ¶ 6.) Again, in my view, this fact does not convert BARM's collection efforts into a basis to impose civil liability under the Bankruptcy Code or state law.

19. The Objectants note that under the terms of the Settlement Agreement, BARM will "receive the $765,000 in cash resulting from the settlement of the Southwest Securities Litigation." (Objection, ¶ 7, note 1.)

20. In agreeing to accept the sum of $1,250,000.00 under the Settlement Agreement, acting under my business judgment, I waived the Estate's claim to a 50% interest in the net settlement proceeds in the settlement of the Southwest Securities Litigation. After investigating the facts underlying the Southwest Securities Litigation and reviewing the applicable law, I concluded that the Estate's claim to a portion of the settlement proceeds was not likely to succeed. As such, the waiver does not provide a basis to deny this Motion.

21. The Objectants note that "BARM also received $1.9 million in tax refunds (much of which was received within the one year of the Barkany Bankruptcy filing, thus falling within the insider preference period which should be applicable to BARM); . . ." (Objection, ¶ 7.)

22. Documents were provided to me to demonstrate that the Debtor assigned his rights to certain income tax refunds to BARM, which the IRS was supposed to issue directly to BARM. Instead, the checks were issued to the Debtor. Through his counsel, the Debtor

and spouse raises a "red flag" upon which liability maybe predicated. The facts alleged by Objectants do not warrant an inference that BARM, through reputable counsel and accountants, acted inappropriately in accepting those payments.

18. The Objectants argue that BARM received payments from Morgan 86, one of the Debtor's Entities. (*See* Objection, ¶ 6.) Again, in my view, this fact does not convert BARM's collection efforts into a basis to impose civil liability under the Bankruptcy Code or state law.

19. The Objectants note that under the terms of the Settlement Agreement, BARM will "receive the $765,000 in cash resulting from the settlement of the Southwest Securities Litigation." (Objection, ¶ 7, note 1.)

20. In agreeing to accept the sum of $1,250,000.00 under the Settlement Agreement, acting under my business judgment, I waived the Estate's claim to a 50% interest in the net settlement proceeds in the settlement of the Southwest Securities Litigation. After investigating the facts underlying the Southwest Securities Litigation and reviewing the applicable law, I concluded that the Estate's claim to a portion of the settlement proceeds was not likely to succeed. As such, the waiver does not provide a basis to deny this Motion.

21. The Objectants note that "BARM also received $1.9 million in tax refunds (much of which was received within the one year of the Barkany Bankruptcy filing, thus falling within the insider preference period which should be applicable to BARM); . . ." (Objection, ¶ 7.)

22. Documents were provided to me to demonstrate that the Debtor assigned his rights to certain income tax refunds to BARM, which the IRS was supposed to issue directly to BARM. Instead, the checks were issued to the Debtor. Through his counsel, the Debtor

thereafter had the refunds delivered to BARM. These facts do not, in my view, provide the basis for a claim against BARM.

23. The Objectants assert that BARM is an insider and thus subject to the one (1) year limitation period regarding the avoidance of preferential transfers. I do not agree. It appears from my investigation that BARM was a creditor of the Debtor using all available means and remedies to enforce its claims and Judgment. The Objectants fail to cite to any legal authority supporting their position to the contrary.

24. The Objectants contend that BARM should be deemed to be a Custodian of the Debtor's funds under 11 U.S.C. § 101(11) because BARM's counsel and BARM purportedly issued correspondence indicating that they represented "the creditors" of the Debtor. (*See* Objection, ¶ 7.)

25. The Objectants do not provide the Court with a copy of the subject correspondence nor do they cite to any authority supporting their position that a creditor's efforts to collect funds owed to its debtor, pre-petition, make them custodians under the Bankruptcy Code.

26. In addition, the Objectants do not allege that, in using the phrase "the creditors" in correspondence, BARM acted improperly or with fraudulent intent.

27. The Objectants note that I reached the Settlement Agreement without the benefit of formal discovery, including the deposition of the Debtor under oath. (*See* Objection, ¶ 11.) The suggestion that I should have refrained from resolving the Estate's claims against BARM until the Debtor was examined under oath is misplaced. The Objectants know that given his criminal difficulties, the Debtor would have invoked his 5th Amendment right against self-incrimination in any examination under oath and that such examination would have yielded nothing of substance.

28.    The Objectants base their Objection, in part, on this Court's comments made during the October 6, 2016 pretrial conference to the effect that the Complaint filed by Mr. Frankel, which advanced a "de facto trustee" theory, was "very well crafted." (Objection, ¶ 12.)

29.    Upon my reappointment, my counsel and I reviewed the Complaint and researched the legal theories underlying the claims advanced therein, including the "de facto" trustee theory and the "custodian" theory. While we concur it was creative, we did not believe that, by a large, the claims set forth therein were legally sustainable. (*Cf.* Objection, ¶ 13; *see* Pergament Aff., ¶ 9.)

30.    Based on their specious arguments, the Objectants question why I would enter into the Settlement Agreement for "the very modest sum of $1.25 million ... [and] BARM's assignment to the Trustee of a number of loans which have been uncollectable for at least six years, and BARM's assignment to the Trustee of its rights as a judgment creditor of some (but not all) of the legal entities controlled by Barkany." (Objection, ¶ 15.)

31.    Based on my business judgment, exercised after extensive negotiations and investigation, I do not view the $1,250,000.00 to be received by the Estate as modest.

32.    Further, I believe there is substantial value to the Estate in taking the various assignments. Not surprisingly, the Objectants offer no proof to substantiate their claims regarding the value of the assignments.

33.    The Objectants allege, in a conclusory fashion, that "it is rare for a major, complex litigation such as this one to be settled by a trustee for such modest consideration before having taken any formal discovery of the parties to the litigation." (Objection, ¶ 16.)

34.    I am unclear as to the basis for the Objectants' characterization of the claims in this litigation as "major" or "complex." The Complaint sets forth a fairly straight forward set

7

of facts and allegations that, with the exception of certain specified transfers, do not pass muster under settled legal principles. If I believed that taking discovery could have uncovered evidence to support the claims against BARM (or formed the basis for additional claims), I would have pursued that discovery. This is especially true given that BARM's collection efforts were led by attorneys and Mr. Belsky, not individual BARM members. In the final analysis, the Complaint is premised on theories that lack support in reported cases. As Trustee, I could not ignore the risks inherent in utilizing the Estate's resources to pursue such theories.

35. The Objectants state that I did not provide any "explanation or discussion" concerning the assets collected by BARM and my conclusion that I cannot recover such assets. (Objection, ¶ 17.) In addition, the Objectants assert that I did not address any of the unliquidated assets currently being held by BARM. (Objection, ¶ 18.)

36. The Objectants appear to be adopting the "de facto" trustee concept alleged by Mr. Frankel and presuming that BARM is not entitled to retain the assets that it collected in its capacity as a judgment creditor of the Debtor and the Debtor Entities. For the reasons stated herein, the arguments raised by the Objectants (Objection ¶¶ 17 and 18) lack merit.

37. Without any explanation, the Objectants contend that "it is very disadvantageous for the Trustee to resolve the Barkany Estate's claims to the Barkany Assets transferred to BARM separate from a resolution of BARM's creditors' claims against the Estate." (Objection, ¶ 19.)

38. While I recognize that a claim against a creditor is often resolved at the same time such creditor's proof of claim is resolved, there is no rule that such resolutions must be simultaneous and, in this instance, the Estate is not disadvantaged by the procedure for the resolution of BARM's (amended) proof of claim set forth in the Settlement Agreement.

39. In entering into the Settlement Agreement, I was focused on ensuring a recovery for the Estate, including by way of the assignments, which I believe have substantial value. In that regard, I am facing statute of limitations deadlines in connection with the commencement of certain contemplated actions that may be impacted by the assignments and did want a failure to resolve the proof of claim to delay obtaining the assignments.

40. The Objectants contend that I am ignoring the insider status of Moshe and Leah Schreiber, who were business partners of the Debtor and who are also members of BARM. (*See* Objection, ¶ 24.)

41. Putting aside that I have not ignored their status, the Objection fails to state how such status presents an impediment to my settlement with BARM. Instead, without explanation, the Objectants states that their status "makes the transfers to them or on their behalf, and their claims against Barkany, even more vulnerable than the transfers to, and clams of, some of the other BARM Creditors." (*Id.*) This unsubstantiated conclusion is an insufficient basis to deny the Motion.

42. The Objectants state that I have mistakenly concluded "that it would be difficult for the Trustee to defeat a motion to dismiss filed by BARM in this adversary proceeding." (Objection, ¶ 25.) However, the Objectants do not explain why my conclusion in mistaken.

43. Similarly, the Objectants offer no support for their conclusion that "[t]here are very strong grounds to defeat any motion to dismiss that may be filed by BARM." (*Id.*) If such grounds exist, the Objectants should have disclosed them to this Court.

44. Regardless, as I have stated repeatedly, I have taken into consideration all pertinent factors in reaching the Settlement Agreement, including the risks and the expenses that litigation entails.

45. The Objectants state that I am mistaken in my belief that I "require[] assignments from BARM and the BARM Creditors of their positions as judgment creditors against certain of the Barkany Legal entities in order to commence or continue litigations against 'insiders' and non-insiders to recover avoidable transfers." (Objection, ¶ 26.)

46. The Objectants misapprehend my position. As set forth in the Motion, the assignments being granted under the Settlement Agreement have value because they remove any doubt as to my ability to bring avoidance actions and/or continue to prosecute avoidance claims based on transfers made by the Debtor Entities. The assignments reduce litigation risks and expenses. Moreover, in the unlikely event this (or another) Court finds that I lack standing to pursue avoidance claims based on transfers by the Debtor through a Debtor Entity, the assignments may serve as the sole means under which I can recover sums for the benefit of the Estate's creditors.

47. The Objectants state that "[t]here are other procedures available to the Trustee to move forward with all viable avoidance actions." (Objection, ¶ 26.) Once again, noticeably absent from the Objection is a description of the other procedures and/or an analysis of the risks and expenses associated with the other procedures.

48. Based on the legal authorities and facts and circumstances surrounding this matter and the investigation conducted by me and my counsel, I believe that the settlement, which ensures a significant recovery to the Estate without the need to expend any further resources, is in the best interest of the Estate.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
      March 22, 2017

                                             Marc A. Pergament